May it please the Court, Mike Chomsky for Appellants Sun and Carrico. I'd like to reserve three minutes for rebuttal. Two years ago, this Court reversed the District Court's holding that the party's license agreement required Sun to exit the market despite the lack of a merits decision favoring Sanofi. It remanded this case to the District Court so that the District Court failed to fulfill this Court's mandate. Mr. Chomsky, is your interpretation of decisions and joining, does that include preliminary injunctions? Your Honor, I think it could include a preliminary injunction if there were a merits component. In other words, if the District Court said that Sanofi had an overwhelming likelihood of success on the merits, that would be a much closer case than what we have here where it's undisputed that the District Court did not make findings of fact or assess the likelihood of success on the merits. No, it's a consent agreement where the findings of fact were presented to it as a final fait accompli. Discuss with me the final license agreement, section 3.5, where you suggested, if I understand the complicated scenario, a distinction between withdrawal and damages. The damages requires a full final court decision, the withdrawal only a decision in joining. That's correct, Your Honor. It seems to me you made a distinction there between a full merits decision and something less than that. Well, I don't think that's correct, Your Honor, and I think the testimony on this point is very clear, and it's actually confirmed by the witnesses for both sides. The distinction that we drew between the withdrawal provision on the one hand and the damages provision on the other is that upon the entry of a merits decision by the District Court in the first instance, Sun would have to withdraw its product from the market, but it would only have to pay damages upon the entry of a final court decision, which section 1.15 of the license agreement defined as a decision from which no appeal has been or can be taken. Where does it say decision on the merits? I don't see that in the language here. I just see decision in joining. Although consent and judgment is on the merits too, isn't it? Sure, Your Honor. It doesn't expressly say in the final version of the party's license agreement a court decision on the merits. It does say court decision in joining, and the last time this case was before the court, the court held that it was objectively ambiguous. It could be a decision on the merits. It could be a simple injunction embodied in a stipulated consent judgment that didn't have findings on the merits, and the District Court's task on remand was to evaluate the extrinsic evidence, and when the court went to do that, it made three fundamental mistakes. The first, and at a very high level of generality, if you review the District Court's opinion, the overwhelming majority of what the District Court did on remand was reiterate the very same textual observations that this court deemed to be inconclusive the first time around, including what, in my opinion, is the very remarkable statement, despite this court's manding, that Sun's position is, quote-unquote, contradicted by a plain, logical reading of the text of Section 3.5. Okay, so that's one area. Sure. But there's a lot of, assuming that we don't buy your argument in gray about the standard of review being de novo all along, assuming we assume there's a deferential standard of review with respect to fact-finding. Leaving that aside, why isn't there enough in the District Court on which we can affirm? In other words, he discusses the witnesses. He doesn't use the word, I believed, or credibility, but I think there's some sense there that he was making credibility determinations with respect to the various statements of the parties, and that's exactly what we told him to do, right? We told him to go for extrinsic evidence. This contract was ambiguous. Your Honor, you certainly instructed the District Court to consider the extrinsic evidence, but our submission, assuming you disagree with our position on the standard of review, I won't argue that, I'll grant you the assumption, you made three significant errors. The first is, New York law is very clear that different kinds of extrinsic evidence are entitled to different amounts of weight. What New York law has said is that the most important evidence is the contemporaneous documentary evidence and the parties' post-agreement conduct that manifests their understanding of what the terms they chose meant. The best cases on that are Coliseum Towers and Strumlauf. Coliseum Towers says that documentary evidence and post-agreement conduct is entitled to great, if not controlling, influence. Now, in our prior Federal Circuit case, we applied Third Circuit law. That's correct. And that requires a clear error standard you're arguing de novo to me. Well, that's not quite what the Third Circuit says. What the Third Circuit said, and the best case on this is the DL Resources case, is that you look to the underlying state law standard of review to supply the adequate or appropriate standard of review. And it was very telling in Sanofi's reply brief in support of the motion to strike, they point out that in DL Resources itself, both parties advocated that the Third Circuit apply the federal standard of review. And despite the parties' agreement that the federal standard controlled, the Third Circuit went and found the pertinent Ohio case law and chose that standard of review. And Sanofi says that's dicta. But I respectfully submit it's the opposite. It's almost an Uber holding, or if you like physics and astronomy, anti-dicta. When the court itself goes out and finds the state law standard of review and says that in the face of a choice of law provision, our policy is to honor the party's choice of law. But the point that I was trying to make before in response to Judge Prost's question is even if you review this under a deferential standard, the biggest mistake that the district court made was it ignored the evidence that Coliseum Towers and Strumlauf say is the most compelling evidence of what the parties meant. And are you referring to the term agreement? Sure. Well, the difficulty I have with the term agreement, and I don't know whether the facts of the other cases implicated this, is that you've got a 10.12, which is the settlement agreement is the bottom line, the last word, the final word. And all other writings are ignored. It supersedes all of those. So it seems a little inconsistent to me that you were relying so heavily on a document which the agreement itself says is irrelevant. Sure, Your Honor. And I didn't mean to interrupt you. I have a couple of responses to that. Well, I mean, they surely changed the term agreement in one respect, and that is deleting the requirement of a final judgment with respect to the decision in joining, right? They certainly did. But this court— So there may come changes in the term agreement. That's correct. But there are a couple of points to make here. The first is this court said notwithstanding that change, it was objectively ambiguous. And the two responses with respect to the integration clause are as follows. The first is, and I think this is very unique and very telling, Sanofi executed the term sheet and returned it with its unambiguous merits decision requirement after it had proposed the different language in the license agreement. And if the question is, did Sanofi really intend to deviate from the term sheet, the answer is they had no business executing that term sheet with the unambiguous merits decision requirement after proposing the language. But you're arguing to me the intent, which is a factual finding made against you. Sure, Your Honor. The court found that that was not the intent. It found the other way on the facts, and those facts are pretty hard for us to assail here on appeal. Sure. I have a couple of responses. The first, as I said before, is that the Third Circuit would apply the underlying New York law, and even as to factual matters, the intermediate court to enter whatever judgment it thinks is appropriate, and the New York courts have said its scope of review is plenary. The second point I would make is that the facts that the district court found are totally inconsistent with the documentary evidence, and in particular with Sanofi's own post-agreement conduct. I mean, if the contract met what Sanofi said it meant, then they would have had... Let me ask you another question because I don't want your time to expire before I get to this. Neither of you has included the consent judgment against the other defendants in the appendix. I pulled it, had my clerk pull it off from Pacer. This is the basis for the injunction against Sun, correct? This was considered to be a decision in joining. That's correct, Your Honor. I wonder if maybe neither party is quite correct about what decision in joining means, in the sense that it reflected merits findings by the district court, that that would be within the scope of it, whereas if you had a stipulated judgment that didn't include a merits finding, it's not. And I look at the stipulated judgment, I don't see in the stipulation a finding of infringement, for example, by the other defendants. Am I correct about that? You are correct about that, Your Honor. So the court in entering the consent judgment is not making a decision on the merits. In other words, I think you're not correct that a stipulated judgment couldn't be a decision in joining. And in fact, there are some cases that suggest that it could be. But it does seem to me that the decision in joining has to reflect either as a stipulated matter or as a non-stipulated matter some reflection of the merits decision by the district court. Your Honor, and so that I can be clear about that, we have taken and continue to take that broader position with respect to the meaning of court decision in joining. It absolutely has to have a merits decision, a finding on the merits. So if there was a stipulation that required the district court to make a merits determination about infringement, for example, would you concede that that would be a decision in joining? Your Honor, I would be willing to make that concession. But we think certainly there has to be some merits component, even if it were a stipulated decision. But we also think that it is at least a fair understanding of the term court decision in joining to mean it actually has to be some affirmative finding by the district court that there is infringement. But the thing is that when you read the two sentences, the one that says decisions in joining and the contract, and then you read the second sentence about a final court decision under what you're talking about discussing with Judge Dyke here, that wouldn't be appealable. That wouldn't be subject to the kick in on the damages provision of the contract. That's correct. But the reason, and again, the big difference between those two provisions is one is the initial action by the district court, and one is a final court decision, which by definition is a decision of this court, or as the evidence demonstrated, if the time for taking an appeal to this court had lapsed, then the district court decision would be final. But Mr. Condon himself... But if you accept the alternative that Judge Dyke is posing to you in terms of what constitutes the decision in joining, the damages provision could never kick in, correct? That's correct, Your Honor. And what is the basis for our thinking that that was... I mean, it seems to me there's an argument you can make on decisions in joining that's maybe a little easier with respect to the entire agreement and the damages kicking in that cannot be made if you are talking about a stipulated judgment. Well, I think that's fair. But to step back for a second and understand what was really going on between the parties here, Sun wanted to be a participant in the formation of a And they were willing to be taken off the market if a court made a judgment that they were in the wrong, that they were infringing the patent and violating Sanofi's rights. But they weren't willing to come off the market if Sanofi bought their competitors off through settlement agreements and negotiated injunctions that didn't reflect a court decision that Sun had actually done something wrong. And they wanted to be able to maintain their ability to market the product and maintain their non-infringement position in those circumstances. And that's the big difference between the withdrawal provision and the damages provision. One of the things the district court relied heavily on was the purpose of the agreement and that we all appreciate and understand that the whole point was to treat everybody, all of the generics, in a similar way. Is it your position that that wasn't the purpose or is it your position that we don't care what the purpose is because maybe that was the purpose but Sanofi ignored that or didn't contemplate this scenario and therefore just was wrong even though that was the purpose? Sanofi made that same argument about the purpose the last time we were here and we actually quoted an exchange between Mr. Condie who was an appellate advocate and Judge Dyke in our briefs where he said well the purpose was either everybody can be on the market or everybody is off the market. And as Judge Dyke pointed out very forcefully in that oral exchange, the last argument, that purposive view of the text of the agreement can't be squared with the fact that it required a court decision in joining in order to bring the other defendants off the market and force some off the market. And the job on remand was to come up with an interpretation of the agreement that made sense and that the text would support and the district court put back into place the very same understanding of the agreement and its scope and purpose that was there before. If I could, and I would love to have an extra minute for rebuttal, but I think this is a very important point to make, which is the district court really fundamentally erred in saying this was all part of one package deal. The most important thing for you guys to keep in mind is that the agreement with Sun, your honors, is that the agreement with Sun was reached at a very different point in time than the agreements that were reached with the other defendants. We reached agreement with Sanofi before the district court's non-infringement decision when Sanofi was very confident about the merits, thought it would win summary judgment, and thought it would be able to keep everybody off the market. Every other agreement was reached after the district court's non-infringement decision where the trigger for withdrawing wasn't ever going to come into play as a result of that. And for that reason, Sanofi used different language than all of the other parties. It's not a court decision in joining, but an order or agreement having the effect of removing. And they came back to us and tried to renegotiate our agreement to have that same language in it. And Mr. Conde stood before the district court in February of 2010 and said, if Sun doesn't renegotiate, the entire House of Cards is going to fall because they don't have the same terms as everybody else. And so with respect to the district court, under any standard of review, he clearly erred in finding that this agreement actually provided from the get-go what Mr. Conde in February of 2010 told the district court it didn't have, and which would cause the entire House of Cards to fall for its absence. Thank you, Mr. Chomsky. We'll restore Mr. Chomsky's three minutes rebuttal. Could you give Mr. Bechtold four extra minutes, if he needs to use it, and that'll keep us even. Exactly. Mr. Bechtold. Good morning. May it please the Court. Under New York law, the amusement business case that we cited in our brief says that the determination of the meaning of an ambiguous clause is a determination of fact. And the Crobland case and the storage technology cases that we cite in our brief says that the Third Circuit would recognize that New York substantive law and would give it the deference that Rule 52A requires. This Court returned the case to Judge Pisano to make that fact determination, and he did. He did it carefully and he did it thoroughly. Let me ask you a couple questions here. First of all, do you agree, do you not, in accordance with our prior decision, that if there just had been an agreement between Sanofi and the other defendants, that would not have qualified as a decision in joining, correct? If there was simply an agreement that they would get off the market without an injunction, you're correct, Judge. That would not have satisfied Paragraph 3.5. Okay. And Sanofi was the first one to propose the decision in joining language, if I look at the negotiating history correctly, right? This was after the term agreement. After the term sheet was negotiated, which the parties recognized was not the final document, but they were still going to negotiate a final settlement agreement. Yes, Sanofi is the one who changed the initial language in 2C to make it into what it is in 3.5. But at that point, the agreement covered both the obligation to pay money and the obligation to get off the market, correct? That's correct. So it seems to me a bit odd to interpret the decision in joining language as meaning just an agreement by the defendants to exit the market as opposed to something that the court had passed on. Why would anyone agree to pay money as a result of a mere stipulation by the defendants in another case? Very good point, Your Honor. I'm glad you raised it. Because several times in Sun's briefs, they say Mr. Conde agreed that it would make no sense for them to pay money without a court decision. And in fact, I hope your clerks have checked the record because Mr. Conde at 8-230 never said that. What he said is he understood Sun's position, which did make sense. No, but I'm asking you. Right, and I want to address it. It made perfect sense to require Sun to pay money even without a decision on the merits because… A consent judgment with an injunction. That was the condition. But it made perfect sense for this reason. Sun never wanted to litigate the case. They didn't even want to spend money on discovery. All they wanted was a guaranteed certain date when they could come on the market royalty-free. And they got that. They also wanted the opportunity that if anybody else came on the market at risk, that they would have the option, not the obligation, but the option to come on the market at the same time. If those people were eventually taken off the market by an injunction, Sun still got its guaranteed period of royalty-free income. But it was entirely fair that they should pay something for the advanced market entry that they got that other people had unjustifiably gotten into. They were relying on the activities of other parties as the excuse to get on the market. They would thereby enjoy additional time selling product and they would make a profit on it because what they had to pay was 60% of their profits. So it's entirely reasonable that for them to get that additional time that they had never bargained for before and did nothing to achieve, that they pay money for it. Now Sun didn't like that and it's understandable they didn't like that. And so they came back and said, no, we don't want to have to pay money under those circumstances. We want to pay money only if you get a final decision, meaning one that is on appeal or not subject to appeal and one that's on the merits. I think it's important to note there were two changes in the initial language of 3.5 that went into the agreement. Sanofi took out the word final and they took out the requirement that the decision be one finding the patent valid and infringed. And Sun knew that. Mr. Chomsky just said something about you have to look at Sanofi's later conduct because they signed the term sheet. That's really a red herring. Everybody knew that 3.5 was broader than the term sheet. Mr. Shivasrava who's… But Sanofi signed the term sheet as well. I mean they agreed to those terms. That was part of the pre-negotiation for the settlement agreement. They got the term sheet back from Sun and they signed it and sent it on. And then they went on to negotiate the agreement. Everybody knew the term sheet was not the final binding agreement. And everybody at Sun knew that 3.5 had been made broader than 2C of the term sheet. Can I ask you why, you know, and we were on the earlier appeal, Sanofi changed the language in the earlier appeal when it presented the consent judgment to the district court, correct? Yes. Why would that be necessary if in your view it's clear that this was, whether we look at the extrinsic evidence or the clear language which the district court did here? I wouldn't say it was necessary, Your Honor. The reason it was advisable was at that point, as this court noted at pages 6 and 7 of its prior decision, Sun was being non-committal. These other people had won their summary judgment of non-infringement and there was a real risk that there would be people on the market at risk. And Sanofi said to Sun, you know, what's your position? If we get these people off, are you coming off? And Sun waffled. And they wouldn't say for sure what their position was going to be. That's reflected in your prior decision. So at that point, Sanofi says to Judge Pisano, well, we need to clarify this because we're trying to negotiate agreements with all these other people and the premise of every one of these agreements was that a settlement was of no value to Sanofi unless all defendants came off the market. One generic, on the market, ruins the market. So it wasn't a question of getting seven of them off the market and leaving Sun on. It had to be everybody off the market. It's not everybody off the market because you've agreed that if they came off the market by an agreement that didn't result in an injunction that Sanofi could stay on the market. So why in your view was this agreement written so that an agreement wouldn't trigger this but an agreement that was embodied in a court order would? What's the distinction between the two? The distinction is if there's simply an agreement to come off the market, that agreement can be renegotiated by the parties at any time. The injunction is an order of the court and it provides finality and it provides assurance and there is no way Sanofi would have settled with the other defendants without having an injunction and, in fact, Sanofi didn't settle with any defendant without getting an injunction. It was an important part of the relief for Sanofi and it was important for the other defendants to know that everybody had been enjoined. Well, that may be, but why in terms of this would you construe decision enjoining as covering a stipulated judgment but not a stipulation that wasn't in the judgment? Because, Your Honor, the injunction puts the power of the court behind the order and as the city of Miami case says that we cite, when a judge signs a consent judgment, he's not just signing on to the party's agreement. The judge has an obligation to review that and determine that it is fair under the law and in the interest of all parties. And remember, if I may, Judge… That's not quite true. That is true where the judge is enforcing a statute or something like that and has to make a fairness determination, but in a situation like this where it's simply implementing a settlement agreement, I don't think there is necessarily any judgment by the court as to the fairness of the settlement. The cases seem to make a pretty clear distinction between those two types of situations and in the cases that you cite, which refer to consent judgment as a decision, it involves exactly the situation you're describing where the court has to make a fairness decision. But that's not true, is it, when we're dealing with just an approval of a settlement agreement between two private parties? I believe it is true, Your Honor. I don't think a district court judge simply signs off on something because the parties have agreed to it. Judge Pisano, remember, was intimately familiar with the merits of the case. He had adjudicated several motions for summary judgment on the merits. He denied the motion for summary judgment of invalidity. He granted the summary judgment motion of non-infringement. This court then reversed his claim construction and vacated that. He had been with these parties for years and years and years, and he was well aware of the public interest in having generic products… But he doesn't make any public interest determination in approving the settlement, does he? Well, a number of the settlements the parties did, the defendants did admit validity and infringement of the patent, and Sun in particular admitted both validity and infringement of the patent. I mean, Sun is here asking to be kept on the market. In this injunction that triggered, in your view, Sun's obligation to get off the market, there's no such determination about infringement or invalidity or anything like that, right? The judge did not make any of those determinations, no. Not in that paper, no. He had previously made determinations on the merits in the summary judgment phase of the case, on remand of the case, when he granted the preliminary injunction against Sun, when he heard the evidence and the preliminary injunction hearing against the other parties. So he was well aware of the merits of the case. And I think it's somewhat demeaning to Judge Pisano to suggest that he simply took these things and signed them because the parties told him to. You're not suggesting I'm being demeaning toward him, are you? No. Can you address your friend's argument on the other side about the first point he made, about how it was legal error because this court said that it construed the license agreement as being objectively ambiguous, and the district court in its determination said it was contradicted by a plain logical reading of the sentences, so that that sort of bumped up as an error as a matter of law, inconsistent with the mandate case. Certainly, Your Honor, thank you. And just this court said that the phrase in the contract was ambiguous. It could mean this, it could mean that. That didn't mean it became irrelevant. It still remained as evidence in the case. So even though it was ambiguous and could have meant other, it's perfectly okay for the judge to say, I've reviewed this now with what I know about the context of this case and the objectives of the parties. And having done that and seeing, now looking at the full record, which is more than this court saw before, that I say when Sun made those changes and said, if it's a question of damages, I want a final decision on merits, and it didn't make the changes with regard to getting off the market, he found that to be meaningful. He never said it was dispositive. He did say it was a relevant piece of evidence and something he was entitled to consider when he listened to the live testimony and had to decide on the credibility of the witnesses and decided that when Mr. Conde explained that he did tell Sun's counsel that 3.5 was broadened and would cover an injunction that was entered by any means, he found that to be credible. Mr. Beck told at 38 in the fact findings of the district court, it says counsel for Sun and Sanofi discussed the meaning of decisions in joining, that it covered every situation, every situation where the court entered an injunction in which the defendants came off the market. And then he finds this was the overall purpose of that language in that section, and it appears to be that either all of the defendants could be on or off the market. Are those findings dispositive? To the extent those are findings of fact... I believe they are, Your Honor, because he was determining the meaning of the ambiguous decision in joining and doing it in the context of what was the expressed intent of the parties, what was their understanding at the time. And he cites Mr. Conde's testimony on that, where Mr. Conde says, I did discuss this with Mr. Fader. Mr. Conde was perfectly honest. He said, I never said to him, well, if we get a consent judgment, that's going to be enough. But what he did say is broad enough to cover any circumstance in which the other defendants are enjoined. The judge found that testimony credible. It goes to the intent. It goes to the determination of the meaning of that clause in the agreement. That's what we ask him to do, isn't it? That's what you ask him to do, yes. But I was just saying, as we started to say at the beginning, Sun's objective in this case, in its settlement, and by the way, it was not the first one to settle, Ebenezer settled before they did, but Sun's objective all along was we want a date certain, we want a license, we don't want to spend a cent on litigation. But if somebody else opens the market, we want equality. Not preference, just equality. And that's the way Judge Pisano interpreted this provision of the contract. They got equality. They got on when everybody else got on. They paid nothing for the time that they were on. But they had to get off when everybody else got enjoined. And the injunctions weren't a matter of paying off these people. The people who went on at risk went on because they had gotten a judgment of non-infringement, which then got reversed. And they knew they were at real risk. They had every reason to want to settle the case on the merits because they'd already lost on summary judgment of invalidity, and now they had just lost on their non-infringement argument. So these were not cases where Sanofi bought off everybody else in order to keep Sun off the market because Sun had a royalty-free license anyway, so that would not have made any sense. If the court has no other questions, I'll finish. Thank you. Thank you very much. Mr. Bechtold, Mr. Chomsky, we restored your three minutes. Thank you. I appreciate that. I just want to make three points, if I could, as quickly as I can. The first is a response to Judge Prost's question. You asked earlier why Sanofi had tried to rewrite the consent judgment. Mr. Bechtold said that the entire point was to clarify the scope of the agreement between the parties so that all of the settlements would work together. There are three problems with that argument. The first is the one that Judge Dyke recognized, which is that if that were the case, the agreement would have been drafted so that Sun would have to come off the market if there had been a voluntary agreement by all of the other parties to leave the market, and instead it was drafted to require a court decision in joining. So when he was asked about that, Mr. Bechtold said, well, the reason an injunction was required is because an injunction has the imprimatur of a court. What's remarkable about that assertion is that it's totally different from what Mr. Conde said when he was asked that same question two years ago. When Mr. Conde was asked at this court's oral argument why an injunction as opposed to an agreement was required, he gave a different answer. He said not because an injunction has the imprimatur of a court, but rather so that there would be a signal to everybody that in fact the other parties had been removed from the market, and therefore it wouldn't be subject to debate. So you have just now heard two completely different answers to that very simple question, and of course you can comb the entire record of the trial below and find that there is no evidence to support either one of those answers because even when he was testifying about this issue at the trial, Mr. Conde didn't provide either of the explanations, the one that he gave two years ago or the different one that Mr. Beckfeld gave now. The second response to that question is that the purpose of rewriting the agreement between the parties was not to clarify them, it was to actually make the Sun agreement match up with all of the other agreements. And remember, as I said before, Your Honors, these agreements were negotiated at very different points in time. Sun reached agreement with its court decision merits requirement before the non-infringement decision. After the non-infringement decision came down, Sanofi offered different terms to every other defendant. Those agreements didn't require a court decision in joining, and there in the record, they required an order or agreement having the effect of removing the other defendants, and Sanofi chose that language for a reason. It's because in the wake of the district court's non-infringement decision, it was highly unlikely that there would ever be a merits decision, and it needed to come up with a mechanism to get everybody off the market. A different mechanism, and one under which either a voluntary agreement or an order was necessary. Sanofi's conduct doesn't make any sense if the agreement meant from the outset what it now says that agreement means. They wouldn't have refused to execute the document, they wouldn't have refused to return it, they wouldn't have sought to invalidate it, they wouldn't have sought to rewrite it. Thank you, Mr. Shumsky.